**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| A.H., a minor, by and through her natural parent and guardian, ROBERT HUNT,<br><br>Plaintiff,<br><br>v.<br><br>THE WENDY'S COMPANY, WENDY'S RESTAURANTS, LLC, WENDY'S INTERNATIONAL, LLC, QUALITY IS OUR RECIPE, LLC, QUALITY SERVED FAST, INC., and MICHAEL LAMBERT,<br><br>Defendants. | JURY TRIAL DEMANDED<br><br>Civ. No. _____ |

## **COMPLAINT**

Plaintiff, A.H., a minor, by and through her natural parent and guardian, Robert Hunt, and by her counsel, Law Office of Peter C. Wood, Jr., PC, and Wetzel, Phillips, Rodgers & Falcone, brings this action against Defendants, The Wendy's Company, Wendy's Restaurants, LLC, Wendy's International, LLC, Quality Is Our Recipe, LLC, Quality Served Fast, Inc., and Michael Lambert. Plaintiff alleges upon knowledge as to herself and her own acts, and otherwise upon information and belief, as follows:

## INTRODUCTION

1.   Plaintiff A.H. ("Plaintiff") brings the instant action to redress harm caused by Defendants' violation of her rights as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff also asserts state law claims for negligent hiring, supervision, and retention, intentional infliction of emotional distress, and assault and battery.

2.   Plaintiff is a former employee of a Wendy's® restaurant owned and/or operated by Defendants Wendy's (defined herein) and Quality Served Fast, Inc. ("QSF").

3.   Throughout Plaintiff's tenure, she was subjected to a barrage of unwanted and inappropriate sexual advances at the hands of her adult supervisor, Defendant Michael Lambert ("Lambert") – an individual with multiple prior criminal charges for assault and harassment.

4.   Among other things, Defendant Lambert continually attempted to lure Plaintiff to his residence to "lie in bed" with him, and repeatedly requested that she "wear special panties" to work for him.

5.   After months of unsuccessfully propositioning Plaintiff, Defendant Lambert approached Plaintiff from behind and forcibly groped her against her will.

6.     Although Defendant Lambert's co-manager learned of his sexual assault on Plaintiff, he refused to act, allowing Defendant Lambert's harassment to continue unabated.

7.     In March 2017, after Plaintiff reported Defendant Lambert's predatory behavior to the Dickson City Police Department, Defendant Lambert pleaded guilty to criminal charges.

8.     Notwithstanding Defendant Lambert's prior criminal record, and newfound guilty plea, Defendants Wendy's and QSF refused to terminate him. Upon information and belief, Defendant Lambert remains employed at the restaurant as of the date of this filing.

9.     As a result of Defendants' conduct, Plaintiff has been harmed, as further set forth below.

## PARTIES

10.    Plaintiff is a minor individual and a former employee of Defendants Wendy's (defined herein) and QSF.

11.    Defendant The Wendy's Company is a Delaware corporation with a principal place of business located at One Dave Thomas Boulevard, Dublin, Ohio 43017.

12.    Defendant Wendy's Restaurants, LLC is a wholly owned subsidiary of The Wendy's Company.

3

13. Defendant Wendy's International, LLC is a wholly owned subsidiary of Wendy's Restaurants, LLC.

14. Defendant Quality Is Our Recipe, LLC is an indirect subsidiary of Wendy's International, LLC, and is the owner and franchisor of the Wendy's® franchise system in the United States.

15. Defendants The Wendy's Company, Wendy's Restaurants, LLC, Wendy's International, LLC, and Quality Is Our Recipe, LLC, shall be hereinafter collectively referred to as "Wendy's."

16. At all times relevant and material herein, Defendant Wendy's acted by and through its agents, servants, and employees, including Defendant Lambert, each of whom acted in the course and scope of their employment with and for Defendant Wendy's.

17. Defendant QSF is a Pennsylvania corporation and franchisee of Defendant Wendy's, and maintains a franchise located at 885 Viewmont Drive, Dickson City, Pennsylvania 18519 (the "Restaurant").

18. At all times relevant and material herein, Defendant QSF acted by and through its agents, servants, and employees, including Defendant Lambert, each of whom acted in the course and scope of their employment with and for Defendant QSF.

19. Defendants QSF and Wendy's shall be hereinafter collectively referred to as the "Corporate Defendants."

20. Defendant Lambert is an adult individual, and was employed by the Corporate Defendants at the Restaurant at all times relevant and material herein.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over Plaintiff's federal claims in accordance with 28 U.S.C. § 1331 because this civil action arises under a law of the United States and seeks redress for violations of a federal law. This Court has jurisdiction over Plaintiff's state law claims because they are supplemental to Plaintiff's underlying federal claims and derive from a common nucleus of operative facts pursuant to 28 U.S.C. § 1367.

22. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this Commonwealth and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

23. Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. On May 5, 2017, Plaintiff dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission, alleging that Defendants Wendy's and QSF discriminated against her on the basis of her sex.

25. On November 28, 2017, the EEOC issued a Notice of Right to Sue to Plaintiff.

## FACTUAL ALLEGATIONS

26. Plaintiff is a 17 year old female. She was hired by the Corporate Defendants as a cashier at the Restaurant in June 2015, at 15 years of age.

27. At all times material, Plaintiff reported directly to her supervisor, Defendant Lambert.

28. In early 2016, Defendant Lambert – who is more than twice the age of Plaintiff – began making a number of unwanted and inappropriate sexual advances towards her.

29. For example, Defendant Lambert repeatedly attempted to lure Plaintiff to his residence, asking Plaintiff, "Do you want to come over and let me show you a good time?"

30. Defendant Lambert also told Plaintiff that if she came to his house, the two could "lie in bed" together and "watch movies."

31. In addition, Defendant Lambert continually asked Plaintiff if she would "wear special panties" to work for him.

32. Plaintiff attempted to rebuff Defendant Lambert's advances, but he continued undeterred.

33. Eventually, Defendant Lambert's sexual misconduct turned physical. Specifically, in June 2016, Defendant Lambert approached Plaintiff from behind and forcibly fondled her against her will.

34. Defendant Lambert's assault left powder handprints from the latex gloves that he had been wearing on the buttocks area of Plaintiff's black pants.

35. Defendant Lambert's co-manager observed the handprints and questioned Plaintiff concerning the same, but chose not to report Defendant Lambert to upper management or otherwise discipline him.

36. After Defendant Lambert's co-manager failed to take corrective action, Plaintiff did not know where to turn. She had not received any meaningful form of anti-harassment training, and did not know who else to report Defendant Lambert's conduct to.

37. Plaintiff therefore continued to suffer through the hostile work environment perpetuated by Defendant Lambert for several months.

38. In November 2016, Plaintiff finally broke down and told her father about Defendant Lambert's sexual misconduct.

39. Plaintiff's father immediately contacted the Dickson City Police Department and reported Defendant Lambert's behavior.

40. The police advised Plaintiff that she should avoid further contact with Defendant Lambert. Plaintiff therefore did not return to work.

41. Thereafter, the police launched an investigation into Plaintiff's allegations.

42. During their investigation, the police interviewed several employees at the Restaurant, including members of management.

43. The Corporate Defendants nonetheless permitted Defendant Lambert to remain employed, and to continue overseeing a staff composed primarily of teenage females.

44. Following the police investigation, Defendant Lambert was criminally charged in connection with his harassment and groping of Plaintiff.

45. On March 24, 2017, Defendant Lambert pleaded guilty to harassment and disorderly conduct.

46. Notably, Defendant Lambert's March 2017 guilty plea was not his first brush with the law. Defendant Lambert had previously been charged with both assault and harassment on more than one occasion.

47. At least one such occasion fell within the time frame that Defendant Lambert was employed by the Corporate Defendants as Plaintiff's supervisor.

48. Nevertheless, even after Defendant Lambert pleaded guilty to groping Plaintiff, the Corporate Defendants refused to terminate him.

49. Upon information and belief, Defendant Lambert remains employed at the Restaurant as of the date of this filing.

50. As a result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, extreme emotional distress, humiliation, embarrassment, anguish, personal hardship, social disruption, and psychological and emotional harm.

51. In fact, Plaintiff was forced to withdraw from school, and was homeschooled for approximately six months.

52. In addition, Plaintiff was required to seek medical treatment, and was diagnosed with post-traumatic stress disorder.

## COUNT I

### VIOLATION OF TITLE VII: HOSTILE WORK ENVIRONMENT
### (Plaintiff v. Defendants Wendy's and QSF)

53. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

54. Plaintiff was an "employee" as defined by 42 U.S.C. § 2000e(f).

55. Defendant QSF was Plaintiff's "employer" within the meaning of 42 U.S.C. §2000e(b).

56. At all times relevant and material herein, Defendant Wendy's controlled the operations of Defendant QSF:

a) Prior to becoming a Wendy's franchisee, a prospective franchisee must provide Wendy's with a comprehensive and detailed three- to five-year business plan, which includes a skilled operator and management team. Training for the management team is accomplished through a four- to six-month training program conducted by Wendy's training personnel. The training program consists of in-restaurant training, classroom training, and regional orientations. The in-restaurant training is conducted in one or more of Wendy's approved training restaurants, while the classroom training is normally conducted in one of the company's regional offices;

b) Once a franchisee completes training and opens a new restaurant, Wendy's provides on-going regional support and a variety of training resources to assist the franchisee;

c) According to Wendy's 2016 Annual Report, "Wendy's strives to maintain quality and uniformity throughout all restaurants by . . . continual in-service training of employees, restaurant operational audits and field visits from Wendy's supervisors. In the case of franchisees, field visits are made by Wendy's personnel who review operations . . . and make recommendations to assist in compliance with Wendy's specifications";

d) Wendy's 2016 Annual Report also provides that "[f]ranchised restaurants are required to be operated under uniform operating standards," "[e]ach year, Wendy's representatives conduct unannounced inspections of all company and franchise restaurants to test conformance to our . . . operational requirements," and "Wendy's monitors franchisee operations and inspects restaurants periodically to ensure that required practices and procedures are being followed";

e) In addition, Wendy's 2016 Annual Report notes that "Wendy's franchisees are contractually obligated to operate their restaurants in accordance with the standards set forth in agreements with them";

f) Moreover, pursuant to a Wendy's Unit Franchise Agreement entered into between Wendy's and its franchisees, Wendy's provides its franchisees with "a multivolume manual describing [Wendy's] operating standards, as well as bulletins, updates, revisions, policy statements and amendments thereto, which may be issued by [Wendy's] from time to time."

57. Accordingly, Defendant Wendy's was also Plaintiff's employer pursuant to a joint employer and/or agency theory of liability.  See Myers v. Garfield & Johnson Enters., Inc., 679 F. Supp. 2d 598, 607-12 (E.D. Pa. 2010).

58. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

59. Throughout the course of her employment, Plaintiff was subjected to pervasive and regular harassment due to her sex at the hands of her immediate supervisor, Defendant Lambert.

60. Defendant Lambert's harassment of Plaintiff detrimentally affected Plaintiff, and would have detrimentally affected a similarly situated reasonable person.

61. The Corporate Defendants were aware, or should have been aware, of Defendant Lambert's harassment of Plaintiff, but failed to correct the same.

62. The Corporate Defendants failed to take reasonable steps to prevent harassment in the workplace, as well to ensure that an adequate complaint-reporting system existed.

63. Through their conduct, the Corporate Defendants violated Title VII.

64. The conduct engaged in by the Corporate Defendants constitutes reckless indifference to the rights of Plaintiff sufficient to subject them to punitive damages.

65. Plaintiff has been injured as a result of the Corporate Defendants' conduct in that she has suffered, and continues to suffer, emotional distress,

humiliation, embarrassment, anguish, personal hardship, social disruption, and psychological and emotional harm.

## COUNT II

### NEGLIGENT HIRING, SUPERVISION, AND RETENTION
### (Plaintiff v. Defendants Wendy's and QSF)

66. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

67. As set forth immediately above, Defendant Wendy's exercised, or maintained the right to exercise, the requisite level of control over the operations of Defendant QSF such that it was Plaintiff's joint employer and/or is vicariously liable to Plaintiff for the acts of its agent and franchisee, Defendant QSF.

68. The Corporate Defendants had a duty to ensure that their premises were safe and adequately staffed and supervised.

69. The Corporate Defendants had a duty to ensure that their employees did not possess a propensity for episodes of sexual assault and/or harassing or reckless behavior.

70. The Corporate Defendants had a duty to exercise reasonable care to prevent their employees from harassing and/or assaulting other employees, including Plaintiff.

71. The negligence, carelessness, and recklessness of the Corporate Defendants consisted of, but was not limited to, the following:

    a) Failing to properly screen their employees;

    b) Failing to maintain proper supervision of the premises and their employees;

    c) Failing to ensure that their employees did not possess a propensity for episodes of sexual assault and/or harassing or reckless behavior; and

    d) Failing to protect Plaintiff from the violent and harassing acts of their employees, which the Corporate Defendants knew or should have known were likely to occur at the premises.

72. The Corporate Defendants knew or should have known that failing to properly screen and/or supervise their employees could result in injuries to Plaintiff.

73. Despite their knowledge, the Corporate Defendants acted with reckless indifference to the safety of others by hiring, selecting, retaining, and failing to supervise employees who had a propensity for episodes of sexual assault and/or harassing or reckless behavior.

74. The Corporate Defendants' actions and/or omissions were committed with reckless disregard for Plaintiff's well-being.

75. As a direct result of the negligence, carelessness, and recklessness of the Corporate Defendants, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, anguish, personal hardship, social disruption, and psychological and emotional harm.

76. All of Plaintiff's losses and damages were, are, and will be due solely to and by reason of the carelessness, negligence, and recklessness of the Corporate Defendants, without any negligence or want of due care on Plaintiff's part contributing thereto.

### COUNT III

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Plaintiff v. Defendant Lambert)**

77. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

78. Defendant Lambert subjected Plaintiff, a minor, to a months-long campaign of unwanted sexual advances, including but not limited to inviting Plaintiff to his home to lie in bed with him, and repeatedly requesting that Plaintiff wear "special panties" to work for him.

79. Defendant Lambert eventually forcibly groped Plaintiff against her will.

80. Defendant Lambert's actions were committed with reckless disregard for Plaintiff's well-being.

81. As a result of Defendant Lambert's extreme and outrageous conduct, Plaintiff has suffered, and continues to suffer, extreme emotional distress.

## COUNT IV

### ASSAULT AND BATTERY
### (Plaintiff v. Defendant Lambert)

82. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

83. Defendant Lambert forcibly groped Plaintiff against her will.

84. Through his conduct, Defendant Lambert intended to place Plaintiff in apprehension of offensive bodily contact.

85. Moreover, such offensive bodily contact actually occurred.

86. Defendant Lambert's assault and battery upon Plaintiff constitutes reckless indifference to the rights of Plaintiff sufficient to subject Defendant Lambert to punitive damages.

87. As a result of Defendant Lambert's conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, and psychological and emotional harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that a judgment be entered in her favor and against Defendants in the following respects:

a) An order awarding compensatory and punitive damages on all counts herein;

b) An order awarding attorneys' fees and expenses on Count I pursuant to 42 U.S.C. § 1988(b); and

c) All other relief as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

**Law Office of Peter C. Wood, Jr., PC**

Date: 2/27/2018          BY:   s/ *Peter C. Wood, Jr.*
                                Peter C. Wood, Jr., Esq. (PA 310145)

                                1170 Route 315, Suite 1
                                Wilkes-Barre, PA 18702
                                Phone: (570) 234-0442
                                Fax: (570) 266-5402
                                peter@pcwlawoffice.com

                         **Wetzel, Phillips, Rodgers & Falcone**

                   BY:   *s/ Bruce J. Phillips*
                          Bruce J. Phillips, Esq. (PA 37115)

                          1170 Route 315, Suite 1
                          Wilkes-Barre, PA 18702
                          Phone: (570) 823-0101
                          Fax: (570) 825-7799
                          bfastastro@aol.com

                          *Co-Counsel for Plaintiff A.H.*