# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.H., a minor, by and through her natural parent and guardian, ROBERT HUNT, <br><br> Plaintiff, <br><br> v. <br><br> THE WENDY'S COMPANY, WENDY'S RESTAURANTS, LLC, WENDY'S INTERNATIONAL, LLC, QUALITY IS OUR RECIPE, LLC, QUALITY SERVED FAST, INC., and MICHAEL LAMBERT, <br><br> Defendants. | NO. 3:18-CV-0485 <br><br> (JUDGE CAPUTO) |

## MEMORANDUM

Presently before me is the Motion to Dismiss Amended Complaint Under Rule 12(b)(6) (Doc. 20) filed by Defendants Wendy's Company, Wendy's Restaurants, LLC, Wendy's International, LLC, and Quality Is Our Recipe, LLC (collectively, "Wendy's Defendants"). Plaintiff A.H. commenced this action against Wendy's Defendants, a Wendy's franchisee, and Michael Lambert after she was sexually harassed by Lambert during the course of her employment. In her Amended Complaint, Plaintiff asserts claims for, *inter alia*, hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. Wendy's Defendants seek dismissal from this action on the bases that: (1) Plaintiff does not have viable claims against them under either joint employer or agency theories of liability; and (2) Plaintiff failed to exhaust her administrative remedies. Because Plaintiff pleads sufficient facts to support a plausible basis for imposing joint employer or agency liability on Wendy's Defendants and Plaintiff properly

commenced an administrative proceeding naming Wendy's Defendants as parties thereto, the motion to dismiss will be denied.

## I. Background

The facts as alleged in the Amended Complaint are as follows:

Plaintiff A.H. ("Plaintiff") is a minor individual. (*See* Doc. 14, ¶ 10). Wendy's Restaurants, LLC is a wholly owned subsidiary of the Wendy's Company. (*See id*. at ¶ 12). Wendy's International, LLC is a wholly owned subsidiary of Wendy's Restaurants, LLC. (*See id*. at ¶ 13). Quality Is Our Recipe, LLC is an indirect subsidiary of Wendy's International, LLC and is the owner of the Wendy's® franchise system in the United States. (*See id*. at ¶ 14). Quality Served Fast, Inc. ("QSF") is a franchisee of Wendy's Defendants and maintains a franchise located at 885 Viewmont Drive, Dickson City, Pennsylvania (the "Restaurant"). (*See id*. at ¶ 17).

In June 2015, when Plaintiff was 15 years of age, she was hired as a cashier at the Restaurant. (*See id*. at ¶ 27). Her supervisor was Defendant Michael Lambert ("Lambert"). (*See id*. at ¶ 28). In early 2016, Lambert began making sexual advances towards Plaintiff. (*See id*. at ¶ 29). Lambert started by making verbal advances towards Plaintiff. (*See id*. at ¶¶ 30-33). In June 2016, Lambert's conduct turned physical and he forcibly fondled Plaintiff against her will. (*See id*. at ¶¶ 34-35). Lambert's co-manager questioned Plaintiff about the incident, but he did not report Lambert to upper management. (*See id*. at ¶ 36).

Plaintiff continued to suffer through the hostile work environment for several months until she reported Lambert's behavior to her father. (*See id*. at ¶¶ 38-39). Plaintiff's father contacted the police and an investigation was opened into Lambert's conduct. (*See id*. at ¶¶ 41-42). Lambert was permitted to continue working despite knowledge of the investigation. (*See id*. at ¶ 44).

Lambert was criminally charged in connection with his harassment and groping of Plaintiff. (*See id*. at ¶ 45). On March 24, 2017, Lambert pled guilty to harassment and disorderly conduct. (*See id*. at ¶ 46). At that time, Lambert had previously been

charged with assault and harassment, and he had also harassed and/or assaulted at least three other female Corporate Defendant employees. (*See id.* at ¶¶ 47-49).

Based on the foregoing, Plaintiff dual filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on May 5, 2017. (*See id.* at ¶ 24). The named Respondents in the administrative action were The Wendy's Company, Wendy's Restaurants, LLC, Wendy's International, LLC, Quality Is Our Recipe, and QSF. (*See* Doc. 22, Ex. "A"). By letter to Plaintiff, the EEOC acknowledged receipt of her charge of employment discrimination, noting the Respondent as "Quality Served Fact, Inc. D/B/A Wendy's." (*Id.* at Ex. "B"). On request of Plaintiff, the EEOC issued a Notice of Right to Sue on November 28, 2017. (*See id.* at Ex. "C"). The Notice of Right to Sue also references "Quality Served Fast, Inc. D/B/A Wendy's." (*Id.*).

Plaintiff then commenced this action on February 27, 2018 against Wendy's Defendants, QSF, and Lambert. (*See* Doc. 1, *generally*). Plaintiff filed her Amended Complaint on June 1, 2018. (*See* Doc. 14, *generally*). The Amended Complaint contains the following claims: (1) violation of Title VII: hostile work environment against Wendy's Defendants and QSF (Count I); (2) violation of the PHRA: hostile work environment against Wendy's Defendants and QSF (Count II); (3) negligent hiring, supervision, and retention against Wendy's Defendant and QSF (Count III); (4) intentional infliction of emotional distress against Lambert (Count IV); and (5) assault and battery against Lambert (Count V). (*See id.*, *generally*).

QSF filed its Answer and Affirmative Defenses to the Amended Complaint on June 20, 2018. (*See* Doc. 19, *generally*). The next day, Wendy's Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. 20, *generally*).[1] The motion to dismiss has now been fully briefed

---

[1] The docket does not reflect the status of service as to Lambert. (*See* docket, *generally*).

and is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## III. Discussion

Counts I and II of the Amended Complaint set forth claims for hostile work environment in violation of Title VII and the PHRA, respectively. (*See* Doc. 14, Counts I-II).

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color,

religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also* 42 U.S.C. § 2000e-2(m) ("[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."). Title VII defines "employer" - subject to certain exceptions not applicable here - as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b).

Similarly, the PHRA makes it unlawful for "any employer because of the . . . sex . . . of any individual . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required." 43 P.S. § 955(a). In contrast to Title VII, the definition of the term "employer" in the PHRA contains a numerical threshold of only four persons. *See id*. at § 954(b).

Although Plaintiff was employed by QSF, she argues that her claims against Wendy's Defendants are viable under both joint employer and agency theories of liability.

**A. Joint Employer Theory of Liability.**

According to Plaintiff, Wendy's Defendants exercised sufficient control over QSF employees to be liable to Plaintiff under a joint employer theory of liability. Wendy's Defendants dispute this claim, contending that Plaintiff fails to plead sufficient facts that they exercised significant control over her employment.

A joint employment relationship exists when "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient

5

control of the terms and conditions of employment of the employees who are employed by the other employer." *Nat'l Labor Relations Bd. v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1123 (3d Cir. 1982). The Third Circuit has recognized this theory of "joint employment" for claims of discrimination under Title VII. *See Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997). A joint employer relationship exists for the purposes of Title VII when "two entities exercise significant control over the same employees." *Id.* (citing *Browning-Ferris*, 691 F.2d at 1123). District courts in this Circuit consider the following factors in determining whether a joint employer relationship exists:

> (1) [A]uthority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;
>
> (2) day-to-day supervision of employees, including employee discipline; and
>
> (3) control of employee records, including payroll, insurance, taxes, and the like.

*Hollinghead v. City of York*, 11 F. Supp. 3d 450, 463 (M.D. Pa. 2014).[2] No single factor is dispositive, and a weak showing of one factor may be offset by a strong showing on the other two factors. *See id.* The parties' beliefs and expectations regarding the relationship between the parties are also relevant. *See id.*

The parties each point primarily to a single district court case to support their position on Wendy's Defendants' status as a joint employer. More particularly, Plaintiff argues that the allegations in the matter *sub judice* are akin to those found by the court to state a plausible joint employment claim in *Myers v. Garfield & Johnson Enters., Inc.*, 679 F. Supp. 2d 598 (E.D. Pa. 2010). In contrast, Wendy's Defendants say that the facts pled here are no different than those found to be an insufficient basis for joint employer liability by the court in *Harris v. Midas*, No. 17-95, 2017 WL

---

[2] The same factors are used in determining joint employment status under the PHRA. *See, e.g., Gift v. Travid Sales Assocs., Inc.*, 881 F. Supp. 2d 685, 690 (E.D. Pa. 2012)

3440693, at *6-8 (W.D. Pa. Aug. 10, 2017). I discuss those cases in turn.

In *Myers*, the plaintiff, a tax preparer, claimed that the franchisor - Jackson Hewitt, Inc. - was liable on a joint employer theory for alleged violations of Title VII and the PHRA by its licensed franchisee. *See Myers*, 679 F. Supp. 2d at 605. The district court concluded that the plaintiff pled sufficient facts to support a finding of joint employment. *See id*. at 609-611. As to the first factor, the *Myers* court explained:

> [T]he Amended Complaint includes allegations suggesting that Jackson has the authority to "promulgate work rules" and "set the conditions of employment." Plaintiff alleges that she was covered by Jackson Hewitt's sexual harassment and other workplace policies and that Jackson Hewitt had the authority to require G & J managers to submit to training and to obey all applicable laws. The Jackson Hewitt Code of Conduct, which plaintiff discussed in the Amended Complaint, also requires that franchisees terminate their employees in certain circumstances, which further supports plaintiff's allegations that Jackson Hewitt exercised significant control over hiring and firing decisions. That the Standard Franchise Agreement disclaims any responsibility on Jackson Hewitt's part to train franchise employees and states that G & J has exclusive authority over hiring and personnel decisions is a factor weighing against plaintiff's "joint employment" claim, but it is not a decisive one, especially at the pleadings stage.

*Id*. at 609-610 (internal citations omitted).

Regarding the second factor:

> [P]laintiff alleges that Jackson Hewitt participated in the daily supervision of G & J employees by reviewing all tax returns prior to filing, by assisting employees with problems with tax returns and the computer system, by requiring that she undergo specific training, and by monitoring the completion of such training. As with respect to hiring and personnel decisions, that the Standard Franchise Agreement disclaims any responsibility on Jackson Hewitt's part to train franchise employees does not preclude the possibility that plaintiff will ultimately obtain evidence that Jackson Hewitt actually assumed such responsibility, as she claims it did.

*Id*. at 610.

With respect to the final factor, the court found that Jackson Hewitt was alleged to have assumed some degree of control over G & J employee records even though

Jackson Hewitt did not pay plaintiff. *See id*. The *Myers* court also found significant the plaintiff's belief that she was a Jackson Hewitt employee. *See id*. The court thus concluded that while it was "not entirely clear" whether the allegations would "ultimately be sufficient to show that Jackson Hewitt was plaintiff's joint employer, on a motion to dismiss the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id*. at 611 (quotation and citation omitted).

Similar to the plaintiff in *Myers*, the plaintiff in *Harris*, a technician at a Midas store, claimed that the franchisors of the store, the "TBC Defendants", were her joint employer and therefore subject to liability for violations of Title VII. *See Harris*, 2017 WL 3440693, at *6. The *Harris* court concluded, however, that there were insufficient facts pled to support a finding of joint employer liability. *See id*. at *8. Beginning with the first factor, the court observed the lack of facts pled that "TBC Defendants had any authority regarding hiring and firing decisions or that she was subject to any of the TBC Defendants' workplace policies." *Id*. at *7. While the plaintiff did allege that the TBC Defendants provided training and maintained the right to inspect the franchise where the plaintiff worked, the court found that the absence of allegations that "the TBC Defendants had the ability to hire and fire Plaintiff, to control her compensation, benefits, and hours, or to promulgate work rules and assignments" all weighed against finding that the first factor supported a joint employment relationship. *Id*.

The second factor likewise did not support finding the TBC Defendants as the plaintiff's joint employer because she did not allege that they had control over her daily work, authority to discipline her, that she ever participated in or was required to participate in training they provided, or that she ever had any interaction with the TBC Defendants. *See id*.

Lastly, the *Harris* court found that the plaintiff's allegations, at best, made a "weak showing" as to the third factor of the joint employer analysis. This, the court

explained, was because the complaint was devoid of "allegations that TBC had any substantial control or even knowledge regarding Plaintiff's employee records including, payroll, insurance, or taxes." *Id*. Emphasizing that the "crux of a joint employer claim is that multiple entities exercise significant control over the same employee" and it appearing that the franchisee-related entities retained almost all control over the plaintiff's employment, the court concluded that the plaintiff failed to plead a plausible basis for joint employer liability. *Id*. at *8. However, the plaintiff was given leave to amend her claims against TBC Defendants. *See id*. at *9 & n.2.

The plaintiff in *Harris* timely filed an amended complaint. *See Harris v. Midas,* No. 17-95, 2017 WL 5177668, at *1 (W.D. Pa. Nov. 8, 2017).[3] And, in contrast to the original complaint, the *Harris* court found that the amended complaint set forth sufficient facts to state a plausible basis for imposing joint employer liability. *See id*.

First, the *Harris* court found that the amended complaint adequately alleged the first factor because the TBC Defendants "had the authority (and in fact did) promulgate work rules" at the store the plaintiff worked. *See id*. at *2. This allegation was further supported by the terms of the applicable franchise agreement, which required the franchisee to "at all times comply with all lawful and reasonable policies, regulations and procedures promulgated or prescribed from time to time by Midas in connection with Franchisee's shop or business, including but not limited to . . . supervision and training of personnel." *Id*.

As to the second factor, the court noted that the plaintiff alleged that the TBC Defendants "exercised - or at least had the authority to exercise - day-to-day control over employees," in that they were able to compel employees to attend training. *Id*. The TBC Defendants were also authorized to inspect the store to ensure compliance with their standards and requirements. *See id*. Based on these allegations, the court concluded that the plaintiff "made at least a weak showing under the second prong."

---

[3] The parties do not cite this decision in their submissions.

*Id*.

The final factor was also sufficiently pled. Specifically, the franchise agreement provided the franchisor with "the right at all reasonable times, to visit Franchisee's shop for the purpose of . . . examining and auditing Franchisee's books and records." *Id*. This broad wording in the franchise agreement reflected, at least for purposes of a motion to dismiss, that the franchisor "exercised some control over employee records" at the store. *Id*. Thus, the *Harris* court found that, "although a close call," the amended complaint contained "sufficient facts to establish a plausible basis for imposing joint employer liability on the TBC Defendants." *Id*. at *3.

Here, Plaintiff pleads sufficient facts to state a plausible basis for finding Wendy's Defendants were Plaintiff's joint employer, so the motion to dismiss on that ground will be denied. As to the first factor, Plaintiff alleges that she was required to sign a conduct policy at the outset of her employment that identified activities "Wendy's considers to be a business abuse or contray to acceptable business practice." (Doc. 14, ¶ 57(b)). Plaintiff was likewise required to sign several additional policies identified as Wendy's rules and regulations. (*See id*. at ¶ 57(c)). Additionally, the Unit Franchise Agreement (the "Franchise Agreement") provides, in pertinent part, that "Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Franchisor may from time to time prescribe in the Manual or otherwise in writing." (Doc. 21, Ex. "B", ¶ 6.11).[4] The franchisee is also

---

[4] I consider the entirety of the Franchise Agreement in evaluating the instant motion without converting it into a request for summary judgment because the Franchise Agreement is quoted at length in the Amended Complaint. *See*, *e.g.*, *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (Although, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). The affidavits attached to Wendy's Defendants' brief, however, are not considered. *See*, *e.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014) ("an affidavit from a defendant may not

10

required to comply with certain rules and codes set forth by Wendy's Defendants. (*See id.* at ¶¶6.6- 6.7). Thus, while the allegations do not establish that Wendy's Defendants had control over hiring and firing decisions, there are facts sufficient at this stage in the litigation regarding Wendy's Defendants' authority to set conditions of employment and work place rules. *See, e.g., Harris*, 2017 WL 5177668, at *2.

The Amended Complaint also contains some facts pertaining to the second factor, *i.e.*, day-to-day employee supervision. More particularly, Plaintiff alleges that at the outset of her employment she was required to undergo a series of computerized training courses authored by Wendy's Defendants. (*See* Doc. 14, ¶ 57(a)). Plaintiff further avers that Wendy's provides continual in-service training of employees. (*See id.* at ¶ 57(e)). And, the Franchise Agreement authorizes the franchisor to conduct periodic inspections and to provide "as it deems advisable, periodic and continuing advisory assistance to Franchisee as to the operation, merchandising, and promotion of the Restaurant." (Doc. 21, Ex. "B", ¶¶ 3.8-3.9).

The third factor considers Wendy's Defendants control of employee records. *See Myers*, 679 F. Supp. 2d at 607. Under the Franchise Agreement, the franchisor is required to provide the franchisee with reporting forms for use in operation of the business. (*See* Doc. 21, Ex. "B", ¶ 3.7). The franchisor also has the right to examine "the books, records, and tax returns of Franchise," (*see id.* at ¶ 107), which is similar to a provision construed by the *Harris* court as being plausibly read to mean that the franchisor exercised some control over employee records for purposes of a 12(b)(6) motion. *See Harris*, 2017 WL 5177668, at *2. This again provides some support for a finding of joint employment.

Lastly, Plaintiff also alleges that she signed a policy referring to an employment relationship with Wendy's. (*See* Doc. 14, ¶ 57(d)).

In sum, while Plaintiff may ultimately be unable to establish joint employment

---

be considered in deciding a motion to dismiss.").

after discovery, she, like the plaintiffs in both *Myers* and *Harris*, has pled enough facts to state a plausible basis to find that Wendy's Defendants were her joint employer. Dismissal of the claims against Wendy's Defendants is not warranted

**B.     Agency Theory of Liability.**

Wendy's Defendants also contend that the claims against them cannot proceed on an agency theory of liability. "[A]lthough there are no third Circuit cases directly on point, 'courts from other jurisdictions have concluded that an employee may be considered 'employed' by a third party as well as by the nominal employer if the third party has a right to control the employee's conduct, either directly or through the third party's control over the employer.'" *Harris*, 2017 WL 5177668, at *3 (quoting *Myers*, 679 F. Supp. 2d at 611). In Pennsylvania, "'whether the control retained by the franchisor is sufficient . . . to establish a master-servant relationship depends in each case upon the nature and extent of such control as defined in the franchise agreement or by the actual practice of the parties.'" *Id*. (quoting *Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 785-86 (3d Cir. 1978)).

For reasons similar to those set forth above, the Amended Complaint contains sufficient allegations of Wendy's Defendants' control over QSF's employees to state a plausible claim on an agency/vicarious liability theory. Specifically, the Franchise Agreement contains some "nebulous and generally phrased" provisions suggesting that Wendy's Defendants "retained a broad discretionary power to impose upon the franchisee virtually any control, restriction, or regulation [they] deemed appropriate or warranted." *Harris*, 2017 WL 5177668, at *3; (*see also* Doc. 21, Ex. "B", ¶¶ 6.11, 6.13, 8.1). Moreover, like in *Myers* and *Harris*, Plaintiff alleges that she was required to submit to Wendy's Defendants' training and to sign their employment policies. (*See* Doc. 14, ¶¶ 57(b)-(d)).[5] Plaintiff's claims against Wendy's Defendants based on

---

⁵      While the Franchise Agreement specifically states that franchisees are not agents of Wendy's Defendants, (*see* Doc. 21, Ex. "B", ¶ 19.1), "such disclaimers are not

an agency theory of liability will not be dismissed.

**C.     Exhaustion.**

Lastly, Wendy's Defendants insist that the Title VII and PHRA claims should be dismissed regardless of Plaintiff's failure to plead sufficient facts under joint employer or agency theories because she failed to exhaust her administrative remedies. Dismissal is not warranted on this ground.

"Before bringing suit under Title VII in federal court, a plaintiff must first file a charge with the EEOC." *Webb v. City of Phila.*, 562 F.3d 256, 262 (3d Cir. 2009) (citing *Hicks v. ABT Assocs. Inc.*, 572 F.2d 960, 963 (3d Cir.1978); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)).[6] "The purpose of this administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" *Id.* (quoting *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir.1996)). While the "'preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion,' the aggrieved party 'is not permitted to bypass the administrative process.'" *Id.* at 262-63 (quoting *Ostapowicz*, 541 F.2d at 398).

Plaintiff, as stated, submitted her discrimination charge to the EEOC on or about May 5, 2017. (*See* Doc. 22, Ex. "A"). Wendy's Defendants were all named as Respondents therein. (*See id.*). The EEOC appears, though, to have subsequently identified Respondent as "Quality Served Fast, Inc. D/B/A Wendy's." (*Id.* at Exs.

---

dispositive of the actual existence of an agency relationship when the franchisor actually retains significant control over the franchisee's activities." *Myers*, 679 F. Supp. 2d at 612.

[6]   Exhaustion of administrative remedies is also required under the PHRA. *See* 43 P.S. §§ 959(a), 962; *see also Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 475-76 (3d Cir. 2001).

13

"B"-"C"). [7] Thus, Wendy's Defendants conclude that Plaintiff's claims against them were not exhausted because she never received a right to sue letter as to them.

As Plaintiff properly commenced her administrative action against Wendy's Defendants, her claims against them here will not be dismissed based on errors made by the EEOC. Indeed, the problem identified by Wendy's Defendants is not a "deficienc[y] in the charge; [it is a] failure[ ] of the EEOC to carry out its responsibilities under Title VII." *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002) (citing 42 U.S.C. § 2000e-(5)(b) & (e)(1) (requiring EEOC to serve charge upon employer within ten days of date charge filed with EEOC)). "Once a valid charge has been filed, a simple failure by the EEOC to fulfill its statutory duties regarding the charge does not preclude a plaintiff's Title VII claim." *Id*. at 404-05 (citing *Walters v. Robert Bosch Corp.*, 863 F. 2d 89, 92 (4th Cir. 1982)); *see also Jones v. U.P.S.*, 502 F.3d 1176, 1185 (10th Cir. 2007) ("it is the EEOC's, not the plaintiff's, duty to provide the charged party with notice . . . a plaintiff should not be penalized for the EEOC's negligence in handling a charge"); *Kacian v. Donahoe*, 9 F. Supp. 3d 546, 551 (W.D. Pa. 2014) ("Although complainants are statutorily required to exhaust the EEOC's administrative remedies as a prerequisite to the maintenance of a Title VII action, we have emphasized that a claimant's right to pursue a civil action is not to be prejudiced by the EEOC's failure to properly process a grievance after it has been filed."); *McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d

---

[7] Although the discrimination charge and related EEOC documents are not attached to the Amended Complaint, they may be considered on a motion to dismiss. *See*, *e.g.*, *Kenne v. SEPTA*, No. 13-6007, 2014 WL 4632332, at *1 n.2 (E.D. Pa. Sept. 17, 2014); *James v. Tri-Way Metalworkers, Inc.*, No. 13-1638, 2014 WL 4640078, at *5 n.4 (M.D. Pa. Sept. 16, 2014); *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 182 (W.D. Pa. 2000) ("we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation, the right to sue letter, and the intake questionnaire, either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one summary judgment.").

695, 704 (E.D. Pa. 2002)(denying motion to dismiss where EEOC failed to serve defendants with a notice of the charges and observing that "courts have held for decades that[ ] a Title VII complainant is not charged with the Commission's failure to perform its statutory duties."). Plaintiff's Title VII and PHRA claims will not be dismissed for failure to exhaust her administrative remedies.

### IV. Conclusion

For the above stated reasons, Wendy's Defendants' motion to dismiss will be denied.

An appropriate order follows.

August 22, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge